# In the United States Court of Federal Claims

No. 02-1085V
(Filed April 30, 2009)

```
* * * * * * * * * * * * * * * * * * * * *    *
                                             *
SCOTT and LAURA BONO, Parents of             *   National Childhood Vaccine
JACKSON BONO,                                *   Injury Act, 42 U.S.C. §§ 300aa-1
                                             *   - 300aa-34 (2006); petition for
              Petitioners,                   *   review; statute of limitations, 42
                                             *   U.S.C. § 300aa-16(a);
       v.                                    *   occurrence of first symptom or
                                             *   manifestation of onset.
SECRETARY OF HEALTH AND                      *
HUMAN SERVICES,                              *
                                             *
              Respondent.                    *
                                             *
* * * * * * * * * * * * * * * * * * * * *    *
```

Jean S. Martin, Wilmington, NC, for petitioners.

Heather L. Pearlman, Washington, DC, with whom was Acting Assistant Attorney General Michael F. Hertz, for respondent.

### MEMORANDUM OPINION AND ORDER

**MILLER,** Judge.

Before the court, after argument on review of a decision dismissing a claim, is the issue whether the medical community's recognition of a symptom, as related to a vaccine injury or illness, is a precondition to commence the limitations period under the National Childhood Vaccine Injury Act, 42 U.S.C. §§ 300aa-1 - 300aa-34 (2006) (the "Vaccine Act"). Not novel in the context of binding precedent, the issue is examined anew because the first symptoms of autism were not recognized as connected with the injury until long after the infant in this case experienced them.

### FACTS

Scott and Laura Bono ("petitioners") filed this petition under the Vaccine Act on behalf of their son Jackson Bono. The parties do not contest the factual findings of the chief special master.

Jackson Bono was born on March 25, 1989. Between June 1, 1989, and August 9, 1990, Jackson received a number of vaccinations as part of the typical series administered to most infants his age. Potential vaccine-related injuries first were noted as early as October 20, 1990, when Laura or Scott Bono wrote on a medical chart that Jackson, at eighteen months of age, "[h]ad 7-20 words but [was] not talking now." Pet'rs' Notice of Filing CD received Apr. 11, 2008, Ex. 3 at 5. Jackson eventually was diagnosed with "[p]artial autistic syndrome" on April 13, 1993. Id. Ex. 4 at 31. Later, Jackson also was diagnosed with Childhood Idiopathic Language Deterioration and Landau-Kleffner Syndrome. During October 2000 Jackson was subjected to a chelation treatment that identified toxic mercury levels in his blood. Subsequent urine testing, completed on August 2, 2004, showed that Jackson had significantly elevated lead levels.

On August 29, 2002, petitioners filed a Short-Form Autism Petition for Vaccine Compensation (the "petition") under the Vaccine Act. 1/ Petitioners on April 11, 2008, submitted the requisite medical records copied to a CD. Respondent moved to dismiss on May 29, 2008, contending that the petition was filed after expiration of the thirty-six month statute of limitations prescribed by the Vaccine Act. See 42 U.S.C. § 300aa-16(a)(1). Briefing was completed on September 19, 2008, and Chief Special Master Gary J. Golkiewicz granted respondent's motion to dismiss on January 16, 2009. See Bono v. Sec'y of Health & Human Servs., No. 02-1085V (Spec. Mstr. Jan. 16, 2009). Petitioners timely filed for review in the United States Court of Federal Claims.

---

1/ By submitting the Short-Form Autism Petition for Vaccine Compensation, petitioners alleged that

> [a]s a direct result of one or more vaccinations covered under the National Vaccine Injury Compensation Program, the vaccine in question has developed a neurodevelopmental disorder, consisting of an Autism Spectrum Disorder or a similar disorder. This disorder was caused by a measles-mumps-rubella (MMR) vaccination; by the "thimerosal" ingredient in certain Diphtheria-Tetanus-Pertussis (DTP), Diphtheria-Tetanus-acellular Pertussis (DtaP), Hepatitis B, and Hemophilus Influenza Type B (HIB) vaccinations, or by some combination of the two.

Autism General Order #1 filed July 3, 2002, Ex. A, Master Autism Petition for Vaccine Compensation, at 2.

2

## DISCUSSION

1. Standard of review

The Vaccine Act specifies that the Court of Federal Claims may elect among three alternative dispositions.  In reviewing a special master's decision, the court can

   (A) uphold the findings of fact and conclusions of law of the special master and sustain the special master's decision,

   (B) set aside any findings of fact or conclusions of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law, or

   (C) remand the petition to the special master for further action in accordance with the court's direction.

42 U.S.C. § 300aa-12(e)(2).

Petitioners have appealed the chief special master's dismissal for failing to satisfy the limitations period established by the Vaccine Act.

   2. Commencement of the statute of limitations

In relevant part, the Vaccine Act requires that

[i]n the case of

. . . .

   (2) a vaccine set forth in the Vaccine Injury Table which is administered after October 1, 1988, if a vaccine-related injury occurred as a result of the administration of such vaccine, no petition may be filed for compensation under the Program for such injury after the expiration of 36 months after the date of the occurrence of the first symptom or manifestation of onset or of the significant aggravation of such injury.

42 U.S.C. § 300aa-16(a)(2).  The dispositive issue in this case is whether the requisite first symptom or manifestation of injury that commences the statute of limitations must be

associated with an injury recognized by the medical community as an injury that is caused by complications from the administration of a childhood vaccine.

Petitioners and respondent present competing interpretations of Markovich v. Sec'y of Health & Human Servs., 477 F.3d 1353 (Fed. Cir. 2007), a leading case interpreting the Vaccine Act's statute of limitations. Petitioners urge that the critical event was the first diagnosis of a vaccine-related injury by Jackson's physician.

Petitioners reason that, under Markovich, an injury triggering the statute of limitations must be recognized by the medical community at large as a vaccine-related injury. Petitioners do not dispute that Jackson's first symptoms presented themselves more than thirty-six months before they filed a petition under the Vaccine Act. However, petitioners insist that, as supported by Markovich, because the medical profession at large does not consider autism to be a vaccine-related injury, the limitations period did not begin to run when Jackson's initial signs first were documented during October 1990. Placed in that context, petitioners characterize dismissal of their petition as "unfair, unduly burdensome, unjust, and [a violation of petitioners'] due process rights." Pet'rs' Br. before the Spec. Mstr., filed June 6, 2008, at 12. 2/

Alternatively, petitioners contend that the chief special master failed to consider adequately the impact of a recent diagnosis of heavy-metal poisoning on the Vaccine Act's statute of limitations. Bono, No. 02-1085V, at 8. The special master addressed the development, or lack thereof, of this argument. Not only did the special master determine that petitioners "failed to develop [the heavy-metal poisoning argument] in any meaningful sense," but also ruled that, because heavy-metal poisoning is a cause of injury and not itself an injury, the "heavy metal poisoning has no relevance to the statute of limitations issue." Id. The special master faulted petitioners for failing to meaningfully develop their argument and discounted its relevance to the case. Id. 3/

---

2/ In an effort to perform a thorough record review, the court found that the briefs before the chief special master on the same issue filled interstices in the briefs on review.

3/ There was further evidence that high levels of lead, a heavy metal, might have come from a source other than the vaccine. Note 7 of the special master's opinion provides further insight:

The undersigned notes[] Jackson's medical records evidence that in addition to "some mercury" being pulled out through chelation, "they are pulling a lot of lead out of his system." P Ex. 11 at 1-2. Jackson's father apparently

4

Petitioners assert that, had the chief special master not acted arbitrarily and capriciously in dismissing their argument for failing to develop it in a "meaningful sense," they would have crafted an argument based on Jackson's heavy-metal poisoning that their petition was timely filed. Petitioners compare themselves to the petitioners in <u>Hoogacker v. Sec'y of Health & Human Servs.</u>, No. 07-795V (Spec. Mstr. Jan. 23, 2009), in which the chief special master gave the petitioner additional time to present his theories of causation regarding heavy-metal poisoning.

In <u>Hoogacker</u> petitioner also faced dismissal for failure to timely file his petition for autism. In addition to the autism claim, the petitioner primarily was seeking compensation for mercury poisoning resulting from a vaccine. To clarify petitioner's argument, the chief special master entered the following order, quoted in part in his decision:

> Thus, in an effort to give petitioner every opportunity to establish a timely filing the undersigned ordered that if "petitioner intends to pursue a claim for mercury poisoning that is separate and distinct from the claim that the vaccines caused Travis's autism, petitioner shall file within thirty days, by no later than August 22, 2008, a response to this Order detailing why petitioner's claim or mercury poisoning should not be dismissed as untimely."

<u>Hoogacker</u>, No. 07-795V, at 2 (emphasis omitted). Even having been afforded this opportunity, petitioner in <u>Hoogacker</u> "failed to specifically address all of the issues laid out in the . . . Order," <u>id.</u>, and the case was dismissed as untimely, <u>id.</u> at 11. Petitioners in the case at bar complain that they were denied a commensurate opportunity to meaningfully develop their case and prove that the first symptom or manifestation of onset of "heavy metal poisoning due to vaccine administration," Pet'rs' Br. before the Spec. Mstr., filed June 16, 2008, at 12, occurred within thirty-six months of their filing date.

---

<u>3/</u>  (Cont'd from page 4.)

indicated to the medical care provider that the family used to have a yard with a fuel line running behind it and Jackson from 0-5 would "eat dirt in the backyard at that time." <u>Id.</u> at 2. Thus were this argument to survive Respondent's Motion there exists a significant issue of where Jackson's alleged diagnosis of "heavy metal poisoning" is due to the mercury or the lead found in his system. <u>Id.</u> at 3.

<u>Bono</u>, No. 02-1085V, at 8 n.7.

5

Respondent maintains that the statute of limitations commenced on October 20, 1990, when the first symptom or manifestation of Jackson's alleged vaccine-related injury occurred. According to respondent, Markovich does not require that the general medical community recognize the injury as vaccine-related. Respondent contends the decisions of the United States Court of Appeals for the Federal Circuit in Markovich, 477 F.3d 1353, and Brice v. Sec'y of Health & Human Servs., 240 F.3d 1367 (Fed. Cir. 2001), support an objective standard grounded on recognition by the medical community at large whether any injury exists, but that "[w]hether or not an injury was vaccine-related was not the issue before the Federal Circuit in Markovich." Resp't's Br. before the Spec. Mstr., filed Sept. 19, 2008, at 4.

Respondent discounts petitioners' alternative argument based on a diagnosis of heavy-metal poisoning. Assuming, *arguendo*, that Jackson suffers from heavy-metal poisoning that contributes to his autism disorder, respondent argues that the Vaccine Act's limitations period turns on the first symptom or manifestation, not the discovery of and diagnosis of heavy-metal poisoning in October 2000. 4/

3. The rule of Markovich

The Federal Circuit's holding in Markovich is decisive in this case. Ashlyn Markovich was given a series of vaccines on July 10, 2000, at the age of approximately two months. On the same day as her vaccinations, Ashlyn's parents noticed that Ashlyn was rapidly blinking her eyes. Ashlyn's parents later contended that the eye blinking did not concern them because they thought the child was simply tired. The eye blinking continued; then, on August 30, 2000, Ashlyn experienced a grand-mal seizure. Ashlyn had seizures almost daily and continued to have rapid eye-blinking episodes. Finally, Ashlyn was diagnosed on January 29, 2002, as having a seizure disorder that expressed itself through four different types of seizures, one type causing the eye blinking. Ashlyn's parents, on behalf of Ashlyn, sued for damages under the Vaccine Act on August 29, 2003, less than thirty-six months after Ashlyn's first grand-mal seizure.

Dismissing Ashlyn's petition as time-barred under 42 U.S.C. § 300aa-16(a)(2), the special master found that the first symptom or manifestation – the triggering event for the purposes of the statute of limitations – was the initial eye-blinking episode on July 10, 2000.

---

4/ During argument respondent's counsel could not opine on the Hoogacker opinion's relevance to petitioners' argument that the chief special master should have provided petitioners an opportunity to develop their argument based on heavy-metal poisoning. The court addresses Hoogacker, therefore, on the basis of petitioners' reference.

6

The Court of Federal Claims sustained the special master's decision, <u>Markovich v. Sec'y of Health & Human Servs.</u>, 69 Fed. Cl. 327 (2005), as did the Federal Circuit, <u>Markovich</u>, 477 F.3d at 1360. The Federal Circuit's decision, binding precedent on the Court of Federal Claims, established the standard that governs the determination of when the first symptom or manifestation of a compensable injury occurs for purposes of the Vaccine Act. The Federal Circuit held that the eye blinking, which could be confused as an ordinary event unrelated to seizures, signaled commencement of the statute of limitations. <u>Id.</u> at 1359.

The court interpreted the "first symptom or manifestation of onset" standard of the Vaccine Act as a disjunctive test to identify one of two different forms of evidence of injury. <u>Id.</u> at 1357. The first evidence of either type of injury, a "first symptom" or a "manifestation of onset," starts the statute of limitations. <u>Id.</u> The court characterized a symptom as possibly being "indicative of a variety of conditions or ailments, and it may be difficult for lay persons to appreciate the medical significance of a symptom with regard to a particular injury." <u>Id.</u> A manifestation was described as "more self-evident of an injury and may include significant symptoms that clearly evidence injury." <u>Id.</u> The Federal Circuit in <u>Markovich</u> identified eye blinking as a symptom of a seizure disorder, while the later suffered grand-mal seizure was a manifestation of onset of a seizure disorder. <u>See</u> <u>id.</u>

The court's comparison of Ashlyn's eye blinking in <u>Markovich</u> versus her experiencing grand-mal seizures renders extraneous petitioners' argument about heavy-metal poisoning. It is undisputed that the first symptoms of Jackson's autism disorder were observed more than thirty-six months before the petition was filed. Similar to the grand-mal seizure in <u>Markovich</u>, the later observed heavy-metal poisoning does not change the triggering event and does not toll the statute of limitations. As the <u>Markovich</u> court stressed, the Vaccine Act mandates that the "*first* symptom *or* manifestation of onset of the injury begins the running of the statute of limitations." <u>Id.</u> at 1360. Petitioners in the case at bar failed to proffer any evidence or suggestion, even after the court's inquiry during argument, 5/ that the heavy-metal poisoning was linked to any injury other than autism. Consequently, petitioners cannot point to record evidence demonstrating that the chief special master acted arbitrarily, capriciously, or contrary to law in not allowing petitioners more time to develop an argument that heavy-metal poisoning was the key symptom or manifestation that linked the mercury component of a vaccine to autism.

<u>Markovich</u> supports respondent's position that a symptom or manifestation need not be accepted as an injury specifically linked to vaccines; it only needs to be identifiable by the

---

5/ The court requested a proffer. Petitioners' counsel committed only to submitting Jackson's medical records to experts for their evaluation.

7

general medical community as a symptom or manifestation of an injury. The Congressional intent, statutory language, and etymology of "generally accepted in the medical profession at large" all support respondent's argument.

Brice keyed the limitations period for a Vaccine Injury Table case to awareness of the first symptom of a vaccine injury, not awareness of the symptom's linkage to a compensable injury under the Vaccine Act. See Brice, 240 F.3d at 1367. The language from Brice, coupled with the holding in Markovich, explains why the medical profession at large need not correlate a symptom or manifestation of injury with a vaccine. According to the Federal Circuit in Brice, Congress intended the limitations period to commence upon the first symptom or manifestation of an ailment, regardless of whether or not the petitioner had knowledge of the vaccine's potential role at the time. See id. at 1373. The court elaborated that "the statute of limitations [under the Vaccine Act] beings to run upon the first symptom or manifestation of the onset of injury, even if the petitioner reasonably would not have known at the time that the vaccine had caused an injury." Id. The court articulated this strict rule in Brice to preempt any question that equitable tolling could be available for a petitioner unaware of the vaccine-injury relationship: "equitable tolling [is] inconsistent with the existing statutory scheme." Id. Markovich adopts the rationale of Brice. Moreover, Markovich reinforced the notion that the statute of limitations should be "strictly and narrowly" construed as statutes of limitations girding a limited waiver of sovereign immunity typically are. Markovich, 477 F.3d at 1360 (citing Brice, 240 F.3d at 1370).

The Federal Circuit's description of Ashlyn's eye-blinking episodes in Markovich supports a ruling in this case that the medical community need not relate an injury with a vaccination to commence the statute of limitations. The court's language postulates that a symptom that only raises a physician's suspicion, and eventually culminates in the manifestation of what could later be established as a vaccine injury, will start the statute of limitations. The eye-blinking episodes "were not normal child behavior, were part of the same injury that culminated on August 30, 2000 in a grand-mal seizure, and would have at the very least raised [the physician's] suspicions." Id. The Federal Circuit has expressed an unequivocal formulation.

The Markovich court also stated that the proper objective standard "is consistent with the statutory requirement that the *first* symptom *or* manifestation of onset of the injury begins the running of the statute of limitations." Id. While embracing the logic that "subtle symptoms that would be recognizable in the medical profession at large but not necessarily to the parent," like eye-blinking, start the limitations period, id., the Federal Circuit quoted in a supporting parenthetical Goetz v. Sec'y of Health & Human Servs., 45 Fed. Cl. 340, 342 (1999), aff'd, 4 F. App'x 827 (Fed. Cir. 2001), and viewed the quoted language as consistent with Brice: "'the occurrence of an event recognizable as a sign of vaccine injury *by the*

8

*medical profession at large*, not the diagnosis that actually confirms such an injury in a specific case.'" Markovich, 477 F.3d at 1360. Thus, Markovich held that "'the first symptom or manifestation of onset,' for the purposes of [the statute of limitations], is the first event objectively recognizable as a sign of a vaccine injury by the medical profession at large." Id. It is this use of "vaccine injury" instead of "injury" that petitioners advance as meaning that the injury in fact must be known to be vaccine-related. However, when the Federal Circuit concluded in Markovich that the eye blinking was "objectively recognizable by the medical profession at large as constituting the first evidence of vaccine injury onset, *i.e.*, the first symptom of injury[,]" id., the appeals court foreclosed the standard that petitioners advocate.

The genesis of the standard "acceptance by the medical profession at large," is traced to a decision of the Court of Federal Claims that associated the standard with injuries listed on the Vaccine Injury Table, 42 U.S.C. § 300aa-14(a) – the injuries presumptively associated with administration of listed vaccines. The Federal Circuit described subtle symptoms under the Vaccine Act as "recognizable to the medical profession at large." Markovich, 477 F.3d at 1360 (citing Goetz, 45 Fed. Cl. at 342). The court endorsed the language in Goetz as "following *Brice*" and "holding that a vaccine claim is based on 'the occurrence of an event recognizable as a sign of a vaccine injury *by the medical profession at large*, not the diagnosis that actually confirms such an injury in a specific case.'" Id.

The issue in Goetz was whether the failure of physicians to inform parents of the connection between a vaccine and the child's injury or whether the cause of action was inherently unknowable equitably tolled the Vaccine Act's limitations provision. The court held that the statute was not tolled because "the government never obscured the facts relating to petitioners' claim," and the symptoms were "obvious." Id. The "'fact'" on which the Table of injuries under the Vaccine Act is based, according to the court in Goetz, is a "claim . . . based [on] the occurrence of an event recognizable as a sign of a vaccine injury by the medical profession at large, not the diagnosis that actually confirms such an injury in a specific case." Id. at 342 (citing Catawba Indian Tribe v. United States, 982 F.2d 1564, 1572 (Fed. Cir. 1993) (defining unknowable action)). Thus, Goetz married the concept of recognition by the general medical profession at large to recognition of the symptom of a vaccine injury. By adopting Goetz, the Federal Circuit arguably liberalized a petitioner's showing that a symptom will not suffice to trigger the statute if it is not recognized by the medical profession at large. However, petitioners, who did not challenge that finding, have no argument to make.

Finally, petitioners' insistence of inequitable treatment in light of Hoogacker is misplaced. Just as the petitioner in Hoogacker failed adequately to address the chief special master's order, petitioners in the instant case were unable to substantiate the argument that

9

the chief special master failed to glean meaningful facts or arguments before dismissing their petition as untimely.

## CONCLUSION

Accordingly, based on the foregoing, petitioners' Motion for Review is denied, and the decision of the chief special master is sustained. The Clerk of the Court shall enter judgment dismissing the petition.

**IT IS SO ORDERED.**

s/ Christine O.C. Miller
_____
**Christine Odell Cook Miller**
Judge